OPINION OF THE COURT
Robert M. Raciti, J.
Having reduced the felony charges against defendant, the *47 People now charge him with petit larceny (Penal Law § 155.25) and criminal possession of stolen property in the fifth degree (Penal Law § 165.40). On July 6, 1999, this court conducted a Wade/Dunaway hearing at which Detectives Steven Geary and Joseph Leron testified. The court credits both witnesses’ testimony in all respects and makes the following factual findings consistent with their testimony.
On April 13, 1998, Detective Geary spoke with the complaining witness, Mary Carrera, who had been the victim of a chain-snatch robbery a week earlier. Carrera gave Detective Geary a general physical description of the robber: a 5-foot 8-inch-tall black man, weighing approximately 145 pounds, with a beard and mustache, and in his twenties. Detective Geary entered that description into a police department computer, omitting mention of the beard and mustache. Because the description entered was so general, the computer generated approximately 1,000 images drawn from its database of individuals who matched that age/height/weight combination, within a prepro-gramed range. They were displayed in groups of six photographic images per screen.
After spending about 10 or 15 minutes, and looking at “at least 30” photographs, Carrera chose defendant’s photograph.[1] With defendant’s photograph in hand, the police searched for defendant, who soon surrendered at the precinct and was arrested.
On June 9, 1998, following defendant’s arrest, Detective Joseph Leron conducted a sit-down lineup at the precinct that included defendant and five fillers, in which defendant chose his numbered position. The similar-looking participants wore identical knit caps, and their torsos were covered by blankets so as to conceal their clothing. Before viewing the lineup, Car-rera was kept physically separated from defendant. At the lineup, asked only if she recognized anyone, Carrera identified defendant as the robber. A photograph of the lineup was introduced into evidence at the hearing.
Legal Conclusions
As the computer changes the social and technological landscape, its impact is felt on law enforcement techniques. In this case, Detective Geary used Carrera’s general description of the *48 suspect and instantly generated from a computer database approximately 1,000 photographic images of people who matched that description. Detective Geary made no effort to print out or otherwise physically preserve the computer-generated array.
At the hearing, defendant raised certain complaints about this procedure. First, he claimed that the use of such a general description in this case — a black man, about 5 feet 8 inches tall, weighing about 145 pounds, and in his twenties — is inherently suggestive because using it to generate photographs of suspects can mislead a witness into an unreliable identification. That concern is unfounded. The risk of suggestiveness in police-arranged identification procedures is the potential in a particular procedure for the police to influence the witness in selecting the defendant. Any assessment of the risk of suggestiveness must make a distinction between the situation, present here, where the police are using a general canvassing array because they have no suspect in mind, and a focused array, in which they have a suspect around whom they have specifically constructed the array. (People v Stokes, 139 AD2d 785 [2d Dept 1988]; People v Burgos, 204 AD2d 344 [2d Dept 1994].)[2] Here, Carrera’s very general description of the robber led to a large, nonsuggestive computer-generated canvassing array.
It is true that an overly general description of the suspect may lead to an inefficiently large number of images in the array. However, it cannot be reasonably maintained that a witness who viewed more than 1,000 photographs generated in this manner would be overwhelmed or frustrated by the task. In any event, the court’s role in deciding a Wade issue is to assess the risk of suggestiveness; it is not to gouge investigative efficacy. In fact, here, the witness viewed only a small fraction of the total number of photographs available to her in the array before she picked out defendant.
Defendant argued that Carrera’s quick selection indicates her witness’s hastiness or frustration, and in fact the odds certainly were against the robber’s appearance in the first 30 of 1,000 images. That observation may be a potent credibility weapon at trial, but it has nothing to do with the suggestiveness of the procedure. Again, the witness was free to view all *49 or some of the images available to her, and her early choice of defendant’s image, whether hasty as defendant contends, or emblematic of her level of certainty as the People counter, is not relevant to the inquiry before this court.
Defendant also argued that the police ought to have preserved in some manner the complete array of images shown to Carrera. He suggested that just as the failure to retain a physical array of photographs is held against the People, here the failure to retain the computer-generated array prejudiced him at the hearing and requires a sanction. (See, People v Kelly, 62 NY2d 516 [1984].) Generally, photographic arrays must be preserved so that the court can discern any subtle, or not-so-subtle, factors that tend to isolate a defendant’s photograph and unfairly increase the odds of its selection by the witness. In fact, failure of the People to do so gives rise to an inference that the array was suggestive. (People v Stokes, 139 AD2d, supra, at 785.) However, even with physical arrays, there are exceptions. No such inference arises where the array is “voluminous” (supra, at 785) because then “ ‘[t]he sheer volume and scope of [the] procedure militates against the presence of suggestiveness’ ”. (People v Faulk, 192 AD2d 717 [2d Dept 1993].) Of course, defendant can argue that here the 1,000 images could have been printed out and made available to the court. However, as any computer user knows, that would require considerable effort, time and expense and simply cannot be justified in this case where a large volume of images was presented to the witness, without any particular suspect in mind. In striking the balance between defendant’s rights and the burden preservation would involve, this court finds no prejudice to defendant arising from the People’s failure to create and preserve a physical copy of the computer-generated array.
Similarly, defendant was not prejudiced by the detective’s failure to preserve at least that fraction of the photographic array that the complaining witness actually viewed. In the first place, it is unlikely that the witness or the detective who conducted the array could reliably determine exactly how many of 1,000 photographs the witness examined during that session, especially since the procedure permitted the witness to quickly flip through any number of digital pages. In these circumstances, any attempt by the detective to preserve only a portion of the array would inevitably lead to the complaint that the omitted portions were unfairly excluded. True, it would have been prudent for the police to have printed at least the *50 page of six images that included defendant. However, given the random nature of the selection process employed here, there is simply no reason to believe that the particular screen of images in which defendant was depicted, or the 30 or so images that the witness viewed, was somehow unrepresentative of the entire array.
In conclusion, the computer-generated photographic array in this case lacked any hint of suggestiveness and the resulting identification of defendant was in no way tainted. Likewise, the People’s failure to create and preserve a physical representation of a computer-generated array did not prejudice defendant and requires no remedy. The Dunaway aspect of defendant’s motion is also denied. Because the photographic array was not suggestive, defendant’s arrest at the precinct based upon Carrera’s positive identification of his photograph was supported by probable cause. As to the lineup, the court finds that it also was the product of a valid arrest, and that it was conducted fairly and without any hint of suggestiveness. Thus, defendant’s motions to suppress are denied in all respects.

. Carrera also viewed a book of 25 to 50 photographs from which defendant’s photograph presumably was absent.

. A very different situation might present itself if the police construct a focused array by deliberately narrowing the database field to defendant’s date of birth, or some other limiting personal information, thereby manipulating the program into displaying defendant’s photograph in a smaller and more skewed array.